UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES SPECIALTY | ) | |
|---|---|---|
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:16-cv-02092 |
| v. | ) | CHIEF JUDGE CRENSHAW |
| | ) | |
| N602DW, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The United States Specialty Insurance Company ("Specialty Insurance") filed this declaratory judgment action against N602DW, LLC (the "Owner") and Bank of America, N.A., seeking a declaration that it is not required to reimburse the Owner for damage to an airplane under an insurance policy. (Doc. No. 1.) The Court has diversity jurisdiction over this action. 28 U.S.C. § 1332(a); (Doc. No. 1 at 2-3.) Before the Court is Specialty Insurance's Motion for Summary Judgment. (Doc. No. 39.) For the following reasons, Specialty Insurance's Motion is **GRANTED**.

I.  UNDISPUTED FACTS

On September 29, 2011, Robert Turner, a member of the Owner, flew a 1968 Beech Baron B55 Aircraft with Registration Number N602DW (the "Baron") to the Northwest Florida Beaches International Airport (aka, "Panama City Airport"). (Doc. No. 45 at 1, 5; Doc. No. 50 at 1, 6.) As it was landing, the Baron's right engine failed, but Turner was able to land the airplane safely.[1] (Doc. No. 45 at 5-6; Doc. No. 50 at 6-7.) Turner left the Baron on the runway ramp at the Panama City Airport, and returned to Nashville using alternative means. (Doc. No. 45 at 6; Doc. No. 50 at

---

[1] It is undisputed that the damage to the engine was not covered by the insurance policy at issue. (Doc. No. 41-1 at 41.)

7.) Within a few days, Turner notified Danny Wayne Brazzell, a member or former member of the Owner, about the incident.[2] (Doc. No. 45 at 2, 6; Doc. No. 50 at 2, 7.)

Shortly after the incident, Turner contacted Chad Goddard, a licensed aircraft mechanic who formerly owned Cumberland Avionics, and asked him to remove the damaged right engine from the Baron, which Cumberland Avionics did. (Doc. No. 45 at 2, 7; Doc. No. 50 at 2, 7.) Goddard shipped the damaged engine to Western Skyways in Colorado for inspection, which Western Skyways received on October 3, 2011. (Doc. No. 45 at 6; Doc. No. 50 at 8.)

At some point, someone accessed the Baron and removed at least the engine bracket and the avionics (the "theft").[3] (Doc. No. 45 at 8; Doc. No. 50 at 9.) However, the Baron remained parked outside at the Panama City Airport until roughly August 2015, during which time Brazzell never contacted the airport about moving the Baron to an indoor hangar. (Doc. No. 45 at 8; Doc. No. 50 at 10.) After ninety days from the date the Baron landed at the Panama City Airport, the Owner was supposed to pay the airport its ramp fees, but it did not do so. (Doc. No. 41-1 at 57.) At that time, Michael Lerma, the General Manager at Sheltair Aviation Services, which is the Fixed Base Operator for the Panama City Airport,[4] contacted Brazzell, who indicated that the aircraft was sold to Turner. (Id.) Lerma attempted to contact Turner, but never received any response calls and as of March 20, 2017, never spoke to Turner. (Id.) On March 21, 2012, Brazzell contacted Turner expressing his concern that the airplane should not be left outside in the salty

---

[2] The dispute regarding whether Brazzell is a current member of the Owner is being litigated in state court. (Doc. no. 45 at 2.) Brazzell filed suit against Turner for breach of contract and specific enforcement of an agreement signed on April 1, 2011, in which Brazzell claims Turner agreed to take over the management and control of the Owner. (Doc. No. 45 at 2.) This dispute is not relevant to the disposition of this Motion.

[3] Theft of any part of the Baron is covered under the insurance policy at issue. (Doc. No. 41-1 at 30.)

[4] The Fixed Base Operator provides ground support services to general aviation aircraft that arrive and depart at the airport. (Doc. No. 41-1 at 56.) As such, when a private plane like the Baron comes to Panama City, it would fly in and out through Sheltair Aviation Service rather than the main airport. (Id.)

Florida air, but Turner replied that lots of airplanes are left outside in Florida. (Doc. No. 45 at 10; Doc. No. 50 at 12.)

Brazzell flew in and out of the Panama City Airport several times since September 29, 2011, and never visited, inspected, or checked on the Baron. (Doc. No. 45 at 8; Doc. No. 50 at 10.) Turner flew in and out of the Panama City Airport at least once, maybe twice, and never went near to or in the Baron. (Doc. No. 41-1 at 67.) Goddard attempted to contact Turner numerous times about finalizing repairs for the Baron prior to Cumberland Avionics closing in October 2014, but Turner did not respond. (Doc. No. 45 at 9; Doc. No. 50 at 11; Doc. No. 41-1 at 52.) The Owner never repaired or replaced the right engine on the Baron. (Doc. No. 45 at 9; Doc. No. 50 at 11.)

On August 27, 2015, Brazzell contacted Specialty Insurance to notify it about the theft, but Brazzell does not know when it occurred. (Doc. No. 45 at 11; Doc. No. 50 at 13.) Brazzell attempted to claim the damage from the theft based on the Owner's insurance policy, number GA00171130-00 (the "Policy"), which was effective from July 1, 2011 until July 1, 2012. (Doc. No. 50 at 4.) Under the Policy, the Owner was required to do all it can do to protect the Baron from further loss, and Specialty Insurance will pay for all reasonable expenses the Owner incurs in protecting it. (Doc. No. 50 at 7.) Otherwise, Specialty Insurance will not be responsible for further loss. (Doc. No. 50 at 7.) The Policy also requires the Owner to give Specialty Insurance a "sworn Proof of Loss statement within 90 days of the loss." (Doc. No. 50 at 7.) The Owner has not provided Specialty Insurance with a sworn Proof of Loss statement. (Doc. No. 45 at 12; Doc. No. 50 at 14.)

When the Policy was issued, it did not list any lienholders. (Doc. No. 50 at 4-5.) On April 5, 2012, Brazzell contacted Specialty Insurance to add Bank of America and Brazzell as the Baron's lienholders. (Doc. No. 50 at 5.) Bank of America first presented its claim to Specialty

Insurance on October 6, 2016. (Doc. No. 50 at 14.) Prior to Bank of America making its claim, on August 10, 2016, Specialty Insurance initiated this declaratory judgment action, seeking an order from the Court that the damage from the theft is not a covered loss under the Policy. (Doc. No. 1.)

II. STANDARD OF REVIEW

This is a case where a lack of evidence by the nonmoving party bearing the burden of proof at trial entitles the moving party to summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Muhammad v. Close, 379 F.3d 413, 416 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "[S]ummary judgment will be granted unless the opposing party offers some competent evidence that could be presented at trial showing that there is a genuine dispute to a material fact." C. Wright & A. Miller, Federal Practice and Procedure § 2727.2, at 497 (2016). "In this way, the burden of producing evidence is shifted to the party opposing the motion." Id. at 497-99. The nonmoving party must "show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Id. at 501. However, the nonmoving party "does not need to show that the dispute as to material facts will be resolved in its favor." Id. Federal Rule of Civil Procedure 56(c) "provides that a party opposing summary judgment and arguing that a material fact is genuinely disputed must support that contention either by citing to materials in the record supporting a genuine factual dispute or by showing that the material in the record does not establish the absence of a genuine dispute." Id. at 507. The nonmovant "cannot satisfy [its] burden by relying on mere allegations in the pleadings to show that there is a triable issue." Id. at 508-09. The Court must determine whether sufficient evidence has been presented to make the material issue of fact a proper jury question. Liberty Lobby, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence

on which the jury could reasonably find for the nonmoving party. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003).

III.  ANALYSIS

Specialty Insurance moves for summary judgment against both the Owner and Bank of America, arguing that the loss from the theft is not covered under the Policy. (Doc. No. 40.) Both the Owner (Doc. No. 45) and Bank of America (Doc. No. 48) argue that there are issues of disputed fact that preclude summary judgment.

*1. Claim Against the Owner*

Specialty Insurance moves for summary judgment against the Owner because it did not notify Specialty Insurance of the loss to the Baron within ninety days. Alternatively, Specialty Insurance argues that after the 2011 engine failure, the Owner did not protect the aircraft from further loss, and therefore any further damage is not covered under the Policy. The Owner argues that the loss is covered because it did not discover the loss until 2015 and it reported the loss within ninety days.

In cases where a federal court has diversity jurisdiction, the court generally applies "the substantive law of the forum state." Savedoff v. Access Grp., Inc., 524 F.3d 754, 762 (6th Cir. 2008) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The parties do not dispute that Tennessee law governs the interpretation of the Policy.

In Tennessee, courts interpret insurance contracts by giving the policy's terms their natural and ordinary meaning. Tata v. Nichols, 848 S.W.2d 649, 650 (Tenn. 1993). "As long as [the policy's] terms are unambiguous, it will be enforced as written." Certain Underwriter's at Lloyd's of London v. Transcarriers, Inc., 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002). A court will not re-

write unambiguous terms of a contract "which may be thought harsh and unjust." Shamrock Homebuilders, Inc. v. Cherokee Ins. Co., 466 S.W.2d 204, 242 (Tenn. 1971).

Specialty Insurance argues that the notice requirement is unambiguous and should be enforced. (Doc. No. 40 at 5.) However, "the notice requirement is immaterial to the insurance contract in the event that the insurer is not prejudiced." Alcazar v. Hayes, 982 S.W.2d 845, 853 (Tenn. 1998). When "an insured has failed to provide timely notice of a claim against it in accordance with a liability insurance policy, it is presumed that the insurer has been prejudiced by the breach." Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 817 (Tenn. 2000). "The insured may rebut this presumption by proffering competent evidence establishing that the insurer was not prejudiced by the insured's delay." Id. Certain non-exclusive guidelines for determining whether the insurer has been prejudiced include (1) "the availability of witnesses to the accident;" (2) "the ability to discover other information regarding the conditions of the locale where the accident occurred;" (3) "any physical changes in the location of the accident during the period of delay;" (4) "the existence of official reports concerning the occurrence;" (5) "the preparation and preservation of demonstrative and illustrative evidence, such as the vehicles involved in the occurrence, or photographs and diagrams of the scene;" and (6) "the ability of experts to reconstruct the scene and the occurrence." Alcazar, 982 S.W.2d at 856 (quoting Great Am. Ins. Co. v. C.G. Tate Const. Co., 279 S.E.2d 769, 776 (N.C. 1981)).

Here, the Owner has not presented any "competent evidence" to rebut the presumption that the Owner's three-year delay in making its claim prejudiced Specialty Insurance. Because the Owner delayed in discovering the missing engine bracket and avionics, Specialty Insurance cannot identify when the alleged-theft occurred, witnesses to the alleged-theft, or whether there was other evidence of the alleged-theft. The Owner has not presented any evidence sufficient to rebut the

presumption of prejudice by its delay in notifying Specialty Insurance of the incident. Muhammad, 379 F.3d at 416 (citing Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586-87); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (requiring the entry of summary judgment if a party fails to make a "showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial"); (see Doc. No. 45 (Defendant's Response to Plaintiff's Statement of Undisputed Facts)). Therefore, summary judgment is granted in favor of Specialty Insurance against the Owner.

The Court would also grant summary judgment on the alternative ground that the Owner did not protect its aircraft after the accident. The Policy is clear and unambiguous that it requires the Owner do all it "can to protect [the Baron] from further loss" after it is damaged. (Doc. No. 41-1 at 29.) If it does not, Specialty Insurance "will not be responsible for further loss." (Id.) After the Baron's engine failure, the Owner did not do all it could do to protect it from further loss by leaving it on the runway for five years—most of that time uninsured. Specialty Insurance is not responsible for the loss from the alleged theft that occurred while the Baron was sitting on the runway.

2. *Claim Against Bank of America*

The Owner's delay does not, however, prevent Bank of America from recovering under the Policy. The Policy's Lienholder's Interest Extension explicitly states that Specialty Insurance will pay a lienholder if there "would otherwise be coverage for the claim except for any act or neglect resulting in [Specialty Insurance's] denial of payment to [the Owner]." (Doc. No. 41-1 at 37.) In other words, Bank of America is entitled to coverage unless Specialty Insurance denies coverage due to the Owner's actions or negligence. Such is the case here.

On Plaintiff's motion for summary judgment, Bank of America has failed to present admissible evidence, as it must, at trial, on whether the theft of the engine bracket and avionics occurred during the time period that the Lienholder Extension was effective—from April 5, 2012 until July 1, 2012. (Doc. No. 41-1 at 38.) Indeed, neither party, Bank of America nor the Owner, has submitted any admissible evidence that proves when the loss occurred.

In Tennessee, the insured has the burden of proving that its damages are covered by the terms of the policy, and the insurer has the burden of proving the applicability of any exclusions on which it relies. Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.482, 487 (Tenn. Ct. App. 2006) (citing Mass. Mut. Life Ins. Co. v. Jefferson, 104 S.W.3d 13, 22 & n.10 (Tenn. Ct. App. 2002)). As such, the insured has the burden of production in proving that the loss occurred within the time period of the policy. No reasonable jury could find that Bank of America met its burden because it does not know when the loss occurred. The mere possibility that it occurred within the three-month period it was included on the Policy is legally insufficient on a motion for summary judgment. See Miller v. Maddox, 866 F.3d 386, 389 (6th Cir. 2017) ("[T]he nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'") (quoting Moore v. Phillip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)). No reasonable jury could find that Bank of America proved it has a covered loss. Specialty Insurance is entitled to summary judgment on its claim against Bank of America as well.

IV. CONCLUSION

For the foregoing reasons, Specialty Insurance's Motion for Summary Judgment (Doc. No. 39) is **GRANTED**.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE